UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| D'MARE ATTE FRANKLIN,<br><br>                                    Petitioner,<br><br>v.<br><br>RALPH DIAZ,<br><br>                                    Respondent. | Case No.:  18cv2788-AJB-LL<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING HABEAS CORPUS PETITION**<br><br>**[ECF No. 1]** |

This Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

On December 10, 2018, Petitioner D'Mare Atte Franklin, a state prisoner proceeding *pro se*, commenced these habeas corpus proceedings pursuant to 28 U.S.C. § 2254. ECF No. 1 ("Pet."). Petitioner challenges his conviction for attempted murder. Pet. at 1; Lodgment 11-15 at 6-9. On February 15, 2019, Respondent filed an Answer. ECF No. 10. On March 8, 2019, Petitioner filed a Traverse. ECF No. 12. The Court has considered the Petition, Answer, Traverse, and all supporting documents filed by the Parties.

For the reasons set forth below, the Court **RECOMMENDS** Petitioner's Petition for Writ of Habeas Corpus be **DENIED**.

///

1

# FACTUAL BACKGROUND

The following facts are taken from the California Court of Appeal's opinion in People v. Franklin [Lodgment 11-26 at 38-60]. Absent clear and convincing evidence to the contrary, the Court gives deference to the state court's factual determinations and presumes them to be correct. See 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

> Franklin and C. arrived at a La Mesa bar around 12:30 a.m. on a June night. They had already imbibed several drinks at C.'s apartment. C., a "regular," greeted the bartender and introduced Franklin as his out-of-state cousin. Franklin came across to the bartender as "a little confrontational." Another patron later characterized him as "aggressive in the way he spoke" and "like he was ready to start something."

> Franklin and C. hung around by the bar and roughhoused with each other a little before leaving briefly to get pizza from a nearby convenience store. They returned with their pizza and played a game of pool. The roughhousing continued. At one point, the bartender intervened, telling them to "take it down a notch."

> As Franklin and C. were playing pool, Terry B. and Jamar B. pulled their car into the bar's parking lot. Terry had spoken to C. on the phone a few minutes prior and knew that C. was at the bar. Terry went inside and greeted C. with a high five. Franklin offered a high five as well but Terry rebuffed him, saying something along the lines of "mind your business." Franklin retorted that they could "fade," meaning fight.

> Franklin and Terry went outside, ostensibly to "fade," but no punches were thrown. There was just a lot of yelling and commotion. However, while they and others were reentering the bar, someone—it was unclear whom—hit Franklin from behind.

> Back inside the bar, Franklin made several phone calls. He dialed his brother, girlfriend, and mother. His brother called back and they spoke briefly. Terry grew suspicious when he saw Franklin on the phone and asked him if he was calling someone to get the

"heat," referring to a gun. Franklin did not respond. Terry's suspicions were not wholly off base. At trial, Franklin testified that his brother gratuitously said he was bringing his gun.

Terry went outside to find Jamar so they could leave. As they approached their car, Franklin emerged from the bar. He yelled that he was "ready to fight." Terry turned and advanced towards Franklin. For several minutes, Franklin and Terry took turns charging at and retreating from each other, but not making contact. Eventually the posturing subsided, and Jamar and Terry got into their car.

Terry backed out of the parking space and began driving toward the parking lot's exit, as Franklin's brother arrived. Franklin bounded around the front of his brother's car to the driver's side and retrieved a gun. He fired four to five rounds at Terry and Jamar's departing vehicle, lodging one bullet in its trunk. As Terry and Jamar's car turned out of the parking lot, Franklin ran after it, hopping down to a lower-level sidewalk and firing five to six more rounds.

Franklin darted back to his brother's vehicle and stowed the gun in the passenger side as a police car pulled into the lot. Franklin ran. The police gave chase, and Franklin tried to evade them, hurdling a fence before reversing course and jumping back over the same fence. Eventually he slowed to a walk and was stopped. While detained, Franklin stomped on his cellphone, calling it a "piece of crap."

The police collected 10 spent firearm casings from the bar's parking lot and the nearby area. A gun registered to Franklin's brother was later found in the San Diego harbor. Nine of the casings were matched to it.

Franklin was charged with four counts: attempted murder of Terry (§§ 664, 187, subd. (a); count one); attempted murder of Jamar (§§ 664, 187, subd. (a); count two); assault on Terry with a semiautomatic firearm (§ 245, subd. (b); count three); and assault on Jamar with a semiautomatic firearm (§ 245, subd. (b); count four). The case proceeded to trial by jury.

At trial, Franklin took the stand in his own defense. According to Franklin, earlier that day tension arose between Terry and him during a conversation at C.'s apartment; Terry had warned, "I'll be back." Franklin was shocked to later see Terry arrive at the bar. He denied challenging Terry to "fade." Franklin testified that he thought Terry was armed and that Terry threatened to kill him. He also testified that after he was punched from behind, he turned and saw Terry. When he fired the gun, Franklin was afraid for his life and wasn't "trying to do anything … besides scar[e] them away from [him]." Franklin also repeatedly testified that he was drunk.

The court instructed the jury on premeditated and deliberate attempted murder (CALCRIM Nos. 600, 601), attempted voluntary manslaughter based on heat of passion (CALCRIM No. 603), attempted voluntary manslaughter based on imperfect self-defense (CALCRIM No. 604), self-defense (CALCRIM No. 505), and voluntary intoxication (CALCRIM No. 625).

The jury convicted Franklin of willful, deliberate, and premeditated attempted murder of Terry and both assault counts. It further found that, with respect to the attempted murder conviction, Franklin personally discharged a firearm within the meaning of section 12022.53, subdivision (c), and with respect to the assault convictions, Franklin personally used a firearm within the meaning of section 12022.5, subdivision (a). As to the second count, the jury acquitted Franklin of the attempted murder of Jamar (§§ 664, 187, subd. (a)), but hung as to the lesser included offense of attempted voluntary manslaughter (§§ 664, 192, subd. (a)). After the court declared a mistrial as to that lesser included offense, the People dismissed the count.

Franklin subsequently moved to reduce his premeditated and deliberate attempted murder conviction to one of attempted voluntary manslaughter or, in the alternative, to have the section 189 premeditation and deliberation finding set aside. The court denied the motion and proceeded to sentencing. For the attempted murder conviction, Franklin was sentenced to an indeterminate life term with a consecutive determinate 20-year term based on the firearm enhancement. For the assault on Jamar, he was sentenced to a concurrent term of six years, plus four years for the firearm enhancement. The sentence for the assault

4

on Terry—also six years, plus four years for the firearm enhancement—was stayed pursuant to section 654.

Lodgment 11-26 at 39-43.

# PROCEDURAL BACKGROUND

## I. Appeal and Petition for Writ of Habeas Corpus to the California Court of Appeal

On April 4, 2017, Petitioner filed an Appellant's Opening Brief in the California Court of Appeal, Fourth Appellate District, Division One ("California Court of Appeal") asserting: (1) his due process and Sixth Amendment rights were violated by the trial court's response to a jury question regarding the burden of proof for heat of passion attempted manslaughter; and (2) his Sixth Amendment rights were violated when his trial counsel failed to object to the trial court's response or ask that the jurors be instructed with a modified version of CALCRIM No. 522 on provocation. See Lodgment 16. On April 4, 2017, Petitioner filed a Petition for Writ of Habeas Corpus to the California Court of Appeal raising the same claims made in his direct appeal. See Lodgment 24.

On November 20, 2017, Petitioner filed a Supplemental Opening Brief asserting his case should be remanded for re-sentencing to allow the trial court to exercise its discretion as to whether to strike or dismiss the firearm enhancements to Petitioner's sentence given the intervening enactment of Senate Bill 620. See Lodgment No. 19.

On March 26, 2018, the California Court of Appeal remanded Petitioner's case for resentencing as to the firearm enhancements, but otherwise affirmed the judgment of conviction in all other aspects. See Lodgments 21 and 25.

## II. Petitions for Review to the California Supreme Court

On May 2, 2017, Petitioner filed petitions for review in the California Supreme Court. See Lodgments 22 and 26. On July 11, 2018, the California Supreme Court summarily denied Petitioner's petitions without comment or citation. See Lodgments 23 and 27.

///

## III.    **Federal Habeas Petition**

On December 10, 2018, Petitioner filed the instant federal Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. <u>See</u> Pet. On February 15, 2019, Respondent filed an Answer. ECF No. 10. On March 8, 2019, Petitioner filed a Traverse. ECF No. 12. On March 12, 2019, the Court accepted Plaintiff's *ex parte* letter requesting that the Court take his *pro se* status into account. ECF No. 14. The Court thereafter took the matter under submission.

## SCOPE OF REVIEW

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Petitioner's Petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Accordingly, the AEDPA applies to the Petition.

Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding.

In making this determination, a court may consider a lower court's analysis. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-04 (1991) (authorizing a reviewing court to look through to the last reasoned state court decision). Summary denials are presumed to constitute adjudications on the merits unless "there is reason to think some other explanation for the state court's decision is more likely." <u>Harrington v. Richter</u>, 562 U.S. 86, 98-101 (2011).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).

A state court's decision is an "unreasonable application" of clearly established federal law where the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003) (quoting <u>Williams</u>, 529 U.S. at 413). "[A] federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." <u>Id.</u> at 75-76 (citations and internal quotation marks omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412.

If the state court provided no explanation of its reasoning, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." <u>Harrington</u>, 562 U.S. at 102. In other words, a federal

7

court may not grant habeas relief if any fair-minded jurist could find the state court's ruling consistent with relevant Supreme Court precedent.  Id.

Habeas relief is also available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); Wood v. Allen, 558 U.S. 290, 293 (2010). A state court's decision will not be overturned on factual grounds unless this Court finds that the state court's factual determinations were "objectively unreasonable in light of the evidence presented in state-court proceeding[.]" See Miller-El, 537 U.S. at 340. This Court will presume that the state court's factual findings are correct, and Petitioner may overcome that presumption only by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Miller-El, 537 U.S. at 340.

## ANALYSIS

Petitioner raises two grounds in his Petition. See Pet. First, Petitioner argues his due process rights were violated when the trial court "incorrectly instructed the jury regarding the burden of proof for heat of passion manslaughter." Pet. at 5. Second, Petitioner argues his trial counsel was constitutionally ineffective by "not objecting to the legally incorrect instruction" given by the trial court and "by not asking that the jurors be instructed with a modified version of CALCRIM [No.] 522" on provocation. Id. at 7.

## IV.  Instructional Error (Ground One)

In Ground One, Petitioner argues his due process rights were violated by the trial court's response to a jury question on the burden of proof for heat of passion attempted voluntary manslaughter. See Pet. at 5.

The record shows during the underlying state court proceedings, the jury was instructed on: (1) attempted murder (CALCRIM No. 600); (2) premeditation and deliberation (CALCRIM No. 601); and (3) attempted voluntary manslaughter committed in the heat of passion (CALCRIM No. 603).

///

///

8

The instruction on attempted murder read as follows:

> The defendant is charged in Counts 1 and 2 with attempted murder.
>
> To prove that the defendant is guilty of attempted murder, the People must prove that:
>
> Number 1, the defendant took at least one direct but ineffective step toward killing another person, and;
>
> Number 2, the defendant intended to kill that person.
>
> A direct step requires more than merely planning or preparing to commit murder or obtaining or arranging for something needed to commit murder. A direct step is one that goes beyond planning or preparation, and shows that a person is putting his or her plan into action. A direct step indicates a definite and unambiguous intent to kill. It is a direct movement toward the commission of a crime after preparations are made. It is an immediate step that puts the plan in motion so the plan would have been completed if some circumstances outside the plan had not interrupted the attempt.
>
> A person may intend to kill a specific victim or victims, at the same time intend to kill everyone in a particular zone of harm or kill zone. In order to convict the defendant of attempted murder of Jamar B[], the People must prove that the defendant not only intended to kill Terry B[], but also either intended to kill Jamar B[]or intended to kill everyone within the kill zone. If you have a reasonable doubt whether the defendant intended to kill Jamar B[] or intended to kill Terry B[] by killing everyone in the kill zone, then you must find the defendant not guilty of the attempted murder of Jamar B[].

Lodgment 11-9 at 87-88.

The instruction on premeditation and deliberation read as follows:

> If you find the defendant guilty of attempted murder under Counts 1 and/or 2, you must then decide whether the People have

proved the additional allegation that the attempted murder was done willfully and with deliberation and premeditation.

The defendant acted willfully if he intended to kill when he acted. The defendant deliberated if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the acts of attempted murder.

The length of time the person spends considering whether to kill does not alone determine whether the attempted killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person, and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration of the choice and its consequences is not deliberate and premeditated. On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time.

The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, you must find this allegation has not been proved.

Lodgment 11-9 at 89.

The instruction on attempted voluntary manslaughter committed in the heat of passion read as follows:

An attempted killing that would otherwise be attempted murder is reduced to attempted voluntary manslaughter if the defendant attempted to kill someone because of a sudden quarrel or in the heat of passion.

The defendant attempted to kill someone because of a sudden quarrel or in the heat of passion if:

Number 1, the defendant took at least one direct but ineffective step toward killing a person;

Number 2, the defendant intended to kill that person;

10

Number 3, the defendant attempted the killing because he was provoked;

Number 4, the provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment, and;

Number 5, the attempted killing was a rash act done under the influence of intense emotion that obscured the defendant's reasoning or judgment.

Heat of passion does not require anger, rage, or any specific emotion. It can be any violent or intense emotion that causes a person to act without due deliberation and reflection.

In order for a sudden quarrel or heat of passion to reduce an attempted murder to attempted voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined.

While no specific type of provocation is required, slight or remote provocation is not sufficient. Sufficient provocation may occur over a short or long period of time. It is not enough that the defendant simply was provoked. The defendant is not allowed to set up his own standard of conduct. You must decide whether the defendant was provoked and whether the provocation was sufficient.

In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than judgment.

If enough time passed between the provocation and the attempted killing for a person of average disposition to "cool off" and regain his or her clear reasoning and judgment, then the attempted murder is not reduced to attempted voluntary manslaughter on this basis.

The People have the burden of proving beyond a reasonable doubt that the defendant attempted to kill someone and was not

acting as a result of a sudden quarrel or in the heat of passion. If the People have not met this burden, you must find the defendant not guilty of attempted murder.

Lodgment 11-9 at 89-91.

During its deliberations, the jury requested "[c]larification on [CALCRIM No.] 603 numbered items 1-4" asking whether "all four criterion need to be met for attempted voluntary manslaughter? We all know number 5 is a guaranteed criterion." Lodgment 11-15 at 3. The Court responded: "[i]n order for the Defendant to be found guilty of attempted voluntary manslaughter, the People must prove beyond a reasonable doubt all five elements enumerated in [CALCRIM No.] 603." Id. The jury then found Petitioner guilty of the attempted murder of Terry B., with a further finding that Petitioner's actions were "willful, deliberate, and premeditated[.]" Lodgment 11-15 at 6.

## 1. **Legal Standard**

Generally, challenges to jury instructions based solely on alleged errors of state law do not state cognizable claims in federal habeas corpus proceedings. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) (holding the fact a jury instruction is "allegedly incorrect under state law is not a basis for habeas relief").

To establish a federal constitutional error based on incorrect jury instructions, petitioner must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147).

If the challenged instruction is found to have violated a petitioner's constitutional right, a reviewing court must determine whether, considering the trial record as a whole, the error was harmless beyond a reasonable doubt. The test for whether a federal constitutional error is harmless depends on the procedural posture of the case. See Davis

v. Ayala, 135 S. Ct. 2187, 2197 (2015). On direct appeal in state court, the harmlessness standard is the one described in Chapman v. California, 386 U.S. 18, 21 (1967). Id. at 2197. Under Chapman, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24.

In a collateral proceeding like this one, Federal district courts on § 2254 habeas review analyze harmlessness under the standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). See Davis, 135 S. Ct. at 2197-98. Under Brecht, the ultimate question before the Court is whether the instructional error resulted in "actual prejudice." 507 U.S. at 637. Actual prejudice exists if the unconstitutional violation had a "substantial and injurious effect or influence in determining the jury's verdict." Id. at 638.

While a petitioner seeking federal habeas relief must meet the Brecht standard, "that does not mean . . . that a state court's harmlessness determination has no significance under Brecht." Davis, 135 S. Ct. at 2198. If a state court has conducted its own harmless error analysis, this constitutes an adjudication of petitioner's claim on the merits. Id. For these reasons, "[w]hen a Chapman decision is reviewed under AEDPA" the court looks to whether "the harmless determination itself was unreasonable." Id. at 2199 (quoting Fry v. Pliler, 551 U.S. 112, 119 (2007)). A state-court decision is not unreasonable if "fairminded jurists could disagree on its correctness." Id. (citations omitted) (internal quotation marks omitted). A petitioner must therefore show that "the state court's decision to reject his claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. (quoting Harrington, 562 U.S. at 103).

### 2. **Analysis**

Petitioner presented his instructional error claim in his petitions for review to the California Supreme Court which summarily denied them. See Lodgments 22, 23, 26, and 27. The Court "looks through" the California Supreme Court's silent denial to the California Court of Appeal's opinion. See Lodgments 21 and 25; Ylst, 501 U.S. at 804 n.3.
///

13

Here, the California Court of Appeal found the trial court's response to the jury question was partially inaccurate:

> The trial court correctly told the jury that the People had the burden of proving the first two "criteria" listed in CALCRIM No. 603—i.e., that the defendant (1) took at least one direct but ineffective step toward killing a person (2) with the intent to kill that person. Beyond that, however, the People did not (as the jury was told) have the burden of proving "criteria" three to five as listed in CALCRIM No. 603. If all three exist, those factors show the presence of sufficient provocation to mitigate the crime, and the People have no obligation or incentive to prove them. Instead, the People have the burden of demonstrating the absence of sufficient provocation by proving beyond a reasonable doubt that at least one of the three factors is not present. In stating that the People were required to prove adequate provocation, the court's response was simply incorrect.

Lodgment 11-26 at 47-48.

The California Court of Appeal concluded however that the trial court's error was harmless beyond a reasonable doubt under the <u>Chapman</u> standard:

> We need not wade into this morass, however, because any error here was harmless even under the more stringent <u>Chapman</u> standard. (See <u>Peau</u>, at p. 830.)
>
> . . . .
>
> The jury was instructed regarding premeditation, deliberation, and willfulness; it found that Franklin's act was indeed premeditated, deliberate, and willful. The People argue that this finding means the jury "necessarily decided" that Franklin was not acting in the heat of passion and so was not prejudiced by any instructional error. (<u>People v. Lewis</u> (2001) 25 Cal.4th 610, 646 [106 Cal. Rptr. 2d 629, 22 P.3d 392].) There is some tension in the case law on this issue, but ultimately we agree with the People.
>
> . . . .

Franklin's jury was instructed that it could not find premeditation and deliberation unless the People proved beyond reasonable doubt that he "carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill." (See CALCRIM No. 601.) The instructions further specified that "[a] decision to kill made rashly, impulsively, or without careful consideration of the choice and its consequences is not deliberate and premeditated." (Ibid.) The erroneous heat of passion instruction, which was explicitly limited to "attempted voluntary manslaughter," did not affect these other instructions. We cannot see how a determination that Franklin carefully weighed his choice to act and did not decide rashly or impulsively can coexist with the heat of passion, which "arises when 'at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment.'" (People v. Barton (1995) 12 Cal.4th 186, 201 [47 Cal. Rptr. 2d 569, 906 P.2d 531], italics added.) In other words, the jury's finding of premeditation and deliberation is "manifestly inconsistent with having acted under the heat of passion" and nullifies any potential for prejudice here. (Wharton, supra, 53 Cal.3d at p. 572; People v. Speight, supra, 227 Cal.App.4th at p. 1246; see also People v. Millbrook, supra, 222 Cal.App.4th at p. 1138.)

Id. at 50, 52-53, 56.

Because the California Court of Appeal's determination constitutes an adjudication of the claim on the merits, "the highly deferential AEDPA standard applies" and this Court "may not overturn the [state court's] decision unless the court applied Chapman in an objectively unreasonable manner." Sifuentes v. Brazelton, 825 F.3d 506, 535 (9th Cir. 2016) (quoting Ayala, 135 S. Ct. at 2198).

In this case, the Court finds that because a "fairminded jurist could agree" with the California Court of Appeal's Chapman determination, Petitioner "necessarily cannot satisfy" the Brecht requirement of showing he was "actually prejudiced" by the state court's error. Id. at 536 (citing Ayala, 135 S. Ct. at 2199).

The jury in this case was properly instructed on both: (1) the elements of an attempted murder conviction; and (2) premeditation and deliberation. <u>See</u> Lodgment 11-9 at 87-89. Notably, the jury was instructed a defendant acts deliberately if he "carefully weigh[s] the considerations for and against his choice and, knowing the consequences, decide[s] to kill." Lodgment 11-9 at 89. The jury was further instructed that "[a] decision to kill made rashly, impulsively, or without careful consideration of the choice and its consequences is not deliberate and premeditated." <u>Id.</u>

Under these properly given instructions, the jury found Petitioner guilty of attempted murder—and explicitly found Petitioner's actions were willful, deliberate, and premeditated. Lodgment 11-15 at 124. As the California Court of Appeal reasonably concluded, because the jury found Petitioner's actions were willful, deliberate, and premeditated, the jury found beyond a reasonable doubt that Petitioner did not act "rashly and without due deliberation" but instead "carefully weighed his choice to act." <u>See</u> Lodgment 11-26 at 56.

Given the "manifest inconsistency" between the jury finding Petitioner's actions were willful, deliberate and premeditated with a "heat of passion" theory, the California Court of Appeal was not unreasonable in determining the jury would not have reduced Petitioner's attempted murder conviction even if properly instructed. <u>Id.</u> at 50, 52-53, 56. In other words, the Court of Appeal was not unreasonable in finding that the jury necessarily rejected the theory that Petitioner was acting in the heat of passion when it found Petitioner's actions were willful, deliberate and premeditated. <u>See</u> <u>also</u> <u>Figueroa v. Montgomery</u>, No. 17-cv-02572-GPC-JL, 2019 U.S. Dist. LEXIS 30623, at *35-36 (S.D. Cal. Feb. 25, 2019) (instructional error harmless where jury's finding that petitioner committed first degree murder was inconsistent with a voluntary manslaughter/heat of passion conviction); <u>see also</u> <u>Chavez v. Sullivan</u>, No. 2:18-cv-00952-JKS, 2019 U.S. Dist. LEXIS 25348, at *37 (E.D. Cal. Feb. 15, 2019) (instructional error harmless where jury found petitioner guilty of premeditated, deliberate murder "and therefore implicitly rejected any theory that [petitioner] acted impulsively or without careful consideration.");

Gonzalez v. Foulk, Case No. CV 14-6323-DMG (JEM), 2017 U.S. Dist. LEXIS 153541, at *79 (C.D. Cal. Mar. 28, 2017) (instructional error harmless where "[b]y finding premeditation and deliberation, the jury necessarily resolved the factual question as to whether [petitioner] acted in the heat of passion[.]"), adopted in 2017 U.S. Dist. LEXIS 153506 (C.D. Cal., Sept. 18, 2017), request for certificate of appealability denied in No. 17-56426, 2018 U.S. App. LEXIS 14422 (9th Cir. May 31, 2018).

For these reasons, the Court **RECOMMENDS** that Petitioner's instructional error claim be **DENIED.**

## V. Ineffective Assistance of Counsel

In Ground Two, Petitioner argues his trial counsel was constitutionally ineffective by: (1) not objecting to the trial court's response to the jury question regarding the burden of proof for an attempted voluntary manslaughter conviction committed in the heat of passion; and (2) not asking that the jurors be instructed with a modified version of CALCRIM No. 522 on provocation. Pet. at 7.

### 1. Legal Standard

"The right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (citations omitted). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id.

To prove ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was deficient; and (2) that this deficient performance prejudiced the defense. Id. at 687. The proper measure of attorney performance is "simply reasonableness under prevailing professional norms." Id. at 688.

In assessing the reasonableness of counsel's performance, the Court "must be highly deferential, avoid the distorting effects of hindsight, and indulge a strong presumption that [counsel's] conduct falls within the wide range of reasonable professional assistance." Williams v. Woodford, 384 F.3d 567, 610 (9th Cir. 2002), cert. denied, 546 U.S. 934

(2005) (quoting Strickland, 466 U.S. at 689). Courts judge the reasonableness of an attorney's conduct "on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. The Court may "neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight[.]" Karis v. Calderon, 283 F.3d 1117, 1130 (9th Cir. 2002), cert. denied, 539 U.S. 958 (citation and quotations omitted); see Yarborough v. Gentry, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.") (citations omitted).

To determine whether errors of counsel prejudiced the defense, a court "must consider the totality of the evidence before the judge or jury" and consider whether "the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." Strickland, 466 U.S. at 696. The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. Id. at 697.

An AEDPA review of claims alleging ineffective assistance of counsel must be "doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (citations omitted).

## 2. **Analysis**

Petitioner presented his ineffective assistance claim in his petitions for review to the California Supreme Court which summarily denied them. See Lodgments 22, 23, 26, and 27. The Court therefore looks to the California Court of Appeal's denial of Petitioner's claim. See Lodgments 21 and 25; Ylst, 501 U.S. at 804 n.3.

The Court finds under the "doubly deferential" standard of review, the California Court of Appeal's decision was not contrary to or an unreasonable application of clearly established law, nor was it based on an unreasonable determination of fact.

First, the California Court of Appeal found Petitioner's trial counsel's failure to object to the trial court's response was not prejudicial under Strickland:

As discussed above, the erroneous jury response was harmless beyond a reasonable doubt in light of the jury's premeditation and deliberation finding. Necessarily there is no prejudice under the lesser Strickland standard. And because we conclude there was no prejudice, it is unnecessary to decide whether counsel's performance was deficient. (See Strickland, supra, 466 U.S. at p. 697 ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed"].)

Lodgment 11-26 at 57.

This rejection was not an unreasonable application of clearly established law. As this Court already discussed, Petitioner cannot satisfy the Brecht requirement of showing he was "actually prejudiced" by the state court's error. Because a greater showing is required to satisfy Strickland's prejudice standard than under Brecht, Petitioner also necessarily fails to demonstrate prejudice under Strickland. See Pirtle v. Morgan, 313 F.3d 1160, 1173 n.8 (9th Cir. 2002) ([Brecht] "involves a lower standard than Strickland's standard for prejudice.").

Second, the California Court of Appeal found Petitioner's trial counsel's failure to request a modified version of CALCRIM No. 522 was not prejudicial:

Similarly, the failure to request a modified version of CALCRIM No. 522, a pinpoint instruction (see People v. Hernandez (2010) 183 Cal.App.4th 1327, 1333), was not prejudicial. Franklin argues that, absent such an instruction, "the jurors were not aware that provocation insufficient to establish heat of passion could still establish that appellant acted without deliberation." But nothing in the standard manslaughter instructions "preclude[d] the jury from giving weight to any evidence of provocation in determining whether premeditation existed." (People v. Rogers (2006) 39 Cal.4th 826, 880.) To the contrary, CALCRIM No. 601—though it does not specifically use the term "provocation"—includes that "[a] decision to kill made rashly, impulsively, or without careful consideration of the choice and its consequences is not deliberate and premeditated." As such, the jury necessarily considered whether Franklin acted "rashly,

impulsively, or without careful consideration of [his] choice";
because the jury decided that he did not, a different outcome is
not reasonably probable had the jury received a modified version
of CALCRIM No. 522.

Lodgment 11-26 at 58.

The Court finds the California Court of Appeal's decision was not contrary to or an unreasonable application of clearly established law, nor was it based on an unreasonable determination of fact.

CALCRIM No. 522 reads as follows:

Provocation may reduce a murder from first degree to second
degree [and may reduce a murder to manslaughter]. The weight
and significance of the provocation, if any, are for you to decide.

If you conclude that the defendant committed murder but was
provoked, consider the provocation in deciding whether the
crime was first or second degree murder. [Also, consider the
provocation in deciding whether the defendant committed
murder or manslaughter.]

[Provocation does not apply to a prosecution under a theory of
felony murder.]

As the California Court of Appeal noted, the jury in Petitioner's case was instructed on premeditation and deliberation (CALCRIM No. 601). <u>See</u> Lodgment 11-9 at 89. As such, the jury was instructed to consider whether Petitioner acted "rashly, impulsively, or without careful consideration of the choice and its consequences[.]" <u>Id.</u> Based on these properly given instructions, the jury found Petitioner's actions were "willful, deliberate, and premeditated[.]" Lodgment 11-15 at 6.

As other Districts have held, given the "common sense notion that provocation is the sort of phenomenon that would affect how deliberate and premeditated a subsequent action is," the California Court of Appeal was not unreasonable in concluding the jury necessarily considered provocation when it found Petitioner's actions were willful, deliberate and

premeditated and that a more specific jury instruction would not have changed the outcome of the proceedings. See Trimble v. Swartout, No. 1:12-cv-01277-LJO-SKO-HC, 2015 U.S. Dist. LEXIS 66088, at *35 (E.D. Cal. May 19, 2015) adopted in ECF No. 17 (E.D. Cal. June 23, 2015). In other words, the Court of Appeal was not unreasonable in finding the jury necessarily rejected a theory Petitioner was so provoked he could not deliberate or premeditate, in finding that Petitioner's actions were willful, deliberate and premeditated.

For these reasons, the Court **RECOMMENDS** that Petitioner's claims alleging ineffective assistance of counsel be **DENIED.**

## CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS HEREBY ORDERED** that no later than **August 20, 2019**, any party to this action may file written objections with this Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 10, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated: July 19, 2019

_____
Honorable Linda Lopez
United States Magistrate Judge